**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**MICHAEL GAYNOR**                                                             **PLAINTIFF**

**V.**                 **CASE NO. 5:11CV00023 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                      **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Michael Gaynor appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.[1] For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**     **<u>Background</u>**

On October 14, 2005, Mr. Gaynor filed for DIB and SSI. In both applications, he alleged disability beginning on December 15, 2001, due to back and feet problems and depression. (Tr. 132-136, 190) Mr. Gaynor's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge ("ALJ") held a hearing on November 7, 2007, at which Mr. Gaynor appeared with his attorney. (Tr. 1005-1057) At the hearing, the ALJ heard testimony from Mr. Gaynor and a vocational expert ("VE"). (Tr. 1042-1056)

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (#7)

The ALJ issued a decision on June 27, 2008, finding that Mr. Gaynor was not disabled under the Act. (Tr. 61-71) On December 5, 2008, the Appeals Council remanded the case to the ALJ for further administrative proceedings. (Tr. 50-53)

A different ALJ[2] held a second hearing on February 12, 2009, at which Mr. Gaynor appeared with his attorney. (Tr. 945-1003) The ALJ heard testimony from Mr. Gaynor, his wife, and a VE.

The ALJ issued a partially favorable decision on August 11, 2009, but finding that Mr. Gaynor was not disabled prior to October 3, 2008. (Tr. 27-38) After Mr. Gaynor turned fifty years old, on October 3, 2008, his age category changed. The ALJ found that considering Mr. Gaynor's condition, education, work experience, and new age category, Medical-Vocational Rule 201.14 directed a finding of disabled as of October 3, 2008. (Tr. 38)

On June 23, 2011, the Appeals Council dismissed Mr. Gaynor's request for review as untimely. (Tr. 4) He then filed this current action. (docket entry #2) The Commissioner requested a remand to the Appeals Council because evidence showed that Mr. Gaynor's request for review was timely. (#6) After remand, the Appeals Council denied Mr. Gaynor's request for review on October 6, 2011, making the second ALJ decision the Commissioner's final decision. (Tr. 4-7)

---

[2] The Honorable David L. Knowles.

Mr. Gaynor was fifty years old at the time of the second hearing. (Tr. 950) He had a high school education and past relevant work as a cashier, stocker, plumber helper, concrete finisher, forklift operator, and poultry worker. (Tr. 951-952, 992)

At the second hearing, Mr. Gaynor amended his disability onset date to October 14, 2005. (Tr. 948) His insured status for DIB expired on March 31, 2007. (Tr. 197) To prevail on his claim to DIB in this action, Mr. Gaynor had to establish that he was disabled prior to March 31, 2007. For SSI, Mr. Gaynor had to establish disability between his amended onset date, October 14, 2005, and October 3, 2008, the date the ALJ found that Mr. Gaynor became disabled.

## II.     Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g) (2005), 416.920(a)-(g) (2005).

The ALJ found that Mr. Gaynor had not engaged in substantial gainful activity since his amended disability onset date. (Tr. 29) The ALJ found that Mr. Gaynor had the

following severe impairments: congenital abnormalities of both feet, including pes planus (flat feet) and hallux abductovalgus (improper toe angulation); status post multiple surgeries on feet; degenerative joint disease bilateral knees; major depression; polysubstance abuse; and alcohol abuse in remission.  (Tr. 29-30)  The ALJ also found, however, that Mr. Gaynor did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. 30-32)

The ALJ determined that Mr. Gaynor had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b).  (Tr. 32-36)  Specifically, the ALJ found that Mr. Gaynor could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk 1 hour in an eight-hour workday with the use of a cane, and sit seven hours in an eight-hour workday.  (Tr. 32)  He could push or pull as much as he could carry, but not with his feet.  Mr. Gaynor could not use foot controls.  He could not climb stairs, ramps, ladders, ropes, or scaffolds.  Mr. Gaynor could occasionally stoop, but not kneel, crouch, or crawl.  Mr. Gaynor was limited mentally to understanding, remembering, and carrying out simple job instructions, making judgments in simple work related situations, responding appropriately to coworkers and supervisors with only occasional contact with them, and handling minor changes in usual work routines.  (Tr. 32-33)

The ALJ determined that Mr. Gaynor's RFC would not allow him to perform any of his past relevant work. (Tr. 36) But after considering Mr. Gaynor's RFC, age, education, work experience, and the VE testimony, the ALJ determined that until October 3, 2008, Mr. Gaynor could have performed the jobs of bench assembly worker, surveillance system monitor, and booth cashier, all of which existed in significant numbers in the national economy. (Tr. 37) Accordingly, the ALJ found that Mr. Gaynor was not disabled before October 3, 2008. (Tr. 37) Considering Mr. Gaynor's condition, education, work experience, and new age category after he turned fifty, the ALJ found that Medical-Vocational Rule 201.14 directed a finding of disabled as of October 3, 2008. (Tr. 38)

### III. Analysis

    A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B.    *Plaintiff's Arguments for Reversal*

Mr. Gaynor claims that the ALJ's decision was not supported by substantial evidence because: (1) his RFC determination is not supported by the medical record; and (2) the VE testimony related to sedentary jobs when the ALJ found Mr. Gaynor's RFC limited him to light work. (#24)

    C.    *Residual Functional Capacity*

The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). It is the claimant's burden, however, to prove RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). Mr. Gaynor argues that, when determining RFC, the ALJ failed to properly consider the medical evidence. Mr. Gaynor does not allege, however, a single limitation beyond the extremely limited RFC found by the ALJ. (#24-1)

Mr. Gaynor testified that his knee and foot problems affected his ability to lift. (Tr. 972) In every one of Mr. Gaynor's previous jobs, he would stand or walk the entire day, with no sitting besides during a break, and frequently lifted and carried objects weighing 50 pounds or more. (Tr. 181-187) The ALJ limited Mr. Gaynor's RFC to lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 993) The ALJ noted to the VE that he was looking for jobs where Mr. Gaynor could grasp and

manipulate objects weighing up to 20 pounds while sitting. (Tr. 994) It does not appear that Mr. Gaynor's knees or feet would have any impact on his ability to grasp and manipulate objects while sitting.

In progress notes from November and December, 2005, Mr. Gaynor stated that his left foot was "doing fine." (Tr. 564) In July, 2006, Mr. Gaynor had full active movement of all extremities. (Tr. 861) In August 2006, Mr. Gaynor was ready to undergo right foot surgery because he was pleased with the results of the surgery on his left foot. (Tr. 787) By September, his pain was getting better. (Tr. 771) In November, Mr. Gaynor stated that he was doing well. (Tr. 768) Mr. Gaynor cancelled his next three follow up appointments. (Tr. 767-768)

By March, 2007, Mr. Gaynor reported that his right foot was okay, but he had some pain if he stood on his foot for very long. (Tr. 726) In May, Mr. Gaynor had a screw removed from his foot and was doing well, with little pain. (Tr. 732) In December, Mr. Gaynor reported knee pain, but an examination was essentially normal, with some degenerative changes. (Tr. 798) His pain was "fairly well controlled." (Tr. 813)

A state agency physician found that Mr. Gaynor could perform a full range of light work. (Tr. 660-667) The ALJ's RFC assessment found far more limitations than the state agency physician found by reviewing the medical record. The ALJ also noted an RFC form completed by completed by J.B. Pierce, M.D. (Tr. 936-938) Dr. Pierce noted

unspecified limitations in balance, walking, standing, stooping, and bending. (Tr. 937) There was no limitation is sitting. In fact, Mr. Gaynor stated that due to his condition, he must sit. (Tr. 169)

Mr. Gaynor testified that he could walk for about thirty minutes at a time without any problem. (Tr. 972) The ALJ limited Mr. Gaynor to a total of one hour standing or walking in an eight-hour work day. (Tr. 32-33) The ALJ also noted the need for a cane, which Mr. Gaynor stated he used for balance. (#24-1, at p. 20) The ALJ found Mr. Gaynor could occasionally stoop, but never kneel, crouch, or crawl. (Tr. 32) The ALJ accounted for every limitation set out by Dr. Pierce, except allegations of pain, which the ALJ found not fully credible. (Tr. 36)

Mr. Gaynor argues that he had the same conditions in 2005 that the ALJ found disabling in 2008, and that the ALJ, therefore, should have found him disabled as of 2005. Mr. Gaynor states in his brief that the "conditions began in October 2005." (#24-1, at p. 17) But Mr. Gaynor testified that he had experienced the same severe foot problems his entire life, since at least 1981, but worked through them. (Tr. 969) He stated that his leg and foot problems first began to bother him in 1978. (Tr. 190)

Mr. Gaynor originally claimed he became unable to work in 2001, but performed at least medium exertion jobs until 2003. (Tr. 181-183, 190) Mr. Gaynor's impairments never caused him to work fewer hours or change job duties. (Tr. 190) As the ALJ explained, the primary reason for his determination that Mr. Gaynor was disabled as of

8

2008 was the fact that Mr. Gaynor had become older, and his new age category supported the finding. (Tr. 37-38)

Mr. Gaynor claims that the ALJ did not account for his use of a cane. (#24-1 at p. 20) He alleges that the cane provides relief from pain and balance in walking, standing, and arising from a sitting position. He states that "[t]his alone appears to eliminate Gaynor from work and certainly does not support the ALJ's RFC." (#24-1, at p. 20)

The point is not well taken. In fact, ALJ specifically found, in his RFC determination, that Mr. Gaynor required the use of a cane. (Tr. 32) The ALJ's hypothetical to the VE noted Mr. Gaynor's ability to lift related to one hand, because "[t]he other hand would be occupied using the cane." (Tr. 993) The VE then asked specifically about the use of only one hand. (Tr. 993-994) The ALJ then noted, again, that Mr. Gaynor's ability to carry would be limited to just one hand due to use of a cane. (Tr. 994) The VE acknowledged this limitation. (Tr. 994) The ALJ then stated, "I know it's kind of a very specific limitations (sic) in ability, here, but I mean, that's what the facts, I think, are showing." (Tr. 994-995) Mr. Gaynor's attorney then questioned the VE, but did not raise a single question regarding the use of a cane.[3] (1001-1003) It is disingenuous for counsel to claim that use of a cane eliminates Mr. Gaynor from working

---

[3] The same attorney represented Mr. Gaynor both at the hearing and in this action. (Tr. 945) (#2, at p. 3)

when the same counsel attended the hearing where the VE testified to jobs Mr. Gaynor could perform, with use of a cane, and counsel did not question the VE about it.

Mr. Gaynor clearly suffered severe impairments. The ALJ noted these impairments when determining that Mr. Gaynor had a very limited RFC. (Tr. 32-36) Substantial evidence in the record, however, supports the ALJ's RFC determination.

D.   *Vocational Expert Testimony*

Mr. Gaynor also takes issue with the VE's testimony. He notes, in italics for apparent emphasis, that the ALJ found an RFC for light work, but the VE only provided jobs that relate to sedentary work. (#24-1 at p. 20)

"If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b). The functional capacity to perform light work includes the functional capacity to perform sedentary work as well. Medical-Vocational Guidelines § 202.00(a); 42 U.S.C. APP., 20 C.F.R. PT. 404, Subpt. P, App. 2.

When the ALJ found that Mr. Gaynor could perform light work, he implicitly found that Mr. Gaynor could also do sedentary work. Mr. Gaynor did not suffer any loss of fine dexterity that would limit such work. Regarding ability to sit, the ALJ found that Mr. Gaynor would have to sit seven hours in an eight-hour day. Typical sedentary work requires the ability to sit six hours in an eight-hour day.

Mr. Gaynor also claims that the "VE stated jobs [that] could be performed in response to the hypothetical of sitting one hour per day. This is inconsistent with the definition of sedentary work." (#21-1 at pp. 21-22) This is simply not true. The ALJ's hypothetical to the VE specifically noted a requirement for sitting "seven hours or more during an eight hour work day." (Tr. 993) The ALJ also noted the sitting requirement in his RFC determination (Tr. 32) and specifically told the VE that Mr. Gaynor needed "a sedentary activity regarding the standing, and the walking, and the sitting." (Tr. 994) As the VE specifically stated, her response noted jobs where Mr. Gaynor could sit seven hours a day. (Tr. 995) Mr. Gaynor's argument on this point lacks merit.

## IV.   Conclusion

The Court has reviewed all of the evidence in the record, including the medical evidence, physician assessments, and the hearing transcript. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Michael Gaynor retained the residual functional capacity to perform jobs existing in significant numbers in the economy until October 3, 2008.

Accordingly, this appeal is DENIED, and the Clerk of Court is directed to close the case, this 13th day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE